ZELL et al., Appellees,

v.

OHIO SUPERINTENDENT of REAL ESTATE, Appellant.

[Cite as *Zell v. Ohio Superintendent of Real Estate* (1992), 79 Ohio App.3d 297.]

Court of Appeals of Ohio,
Cuyahoga.

No. 60365.

Decided April 20, 1992.

*George R. Penfield,* for appellees.

*Lee Fisher,* Attorney General, and *Nancy H. Rogoff,* Assistant Attorney General, for appellant.

---

JOHN F. CORRIGAN, Presiding Judge.

The Superintendent of the Ohio Department of Commerce, Division of Real Estate ("superintendent"), appeals from the judgment of the trial court which granted Thomas and Elaine Zell's application for recovery from the Real Estate Recovery Fund. For the reasons set forth below, we reverse.

## I

On April 21, 1989, the Zells ("applicants") obtained a default judgment against real estate salesman Nancy Dickens, in connection with the execution of a lease with an option to purchase their property. Thereafter, on August 17, 1989, the applicants commenced this action pursuant to R.C. 4735.12 in order to collect upon that judgment from the Real Estate Recovery Fund.

The matter proceeded to trial on July 19, 1990. Thomas Zell was the only witness to testify and he established that in March 1987, he read the following advertisement in the Plain Dealer:

· "Lease. Option—West suburbs. Limited Homes Available for lease option. Occupancy in 30–60 days. Call now for reservations. Re/Max Advantage Realty 871–7777, Nancy Dickens (residence) 327–9051."

Zell then called Re/Max Advantage Realty ("Re/Max Advantage") in response to the ad, and spoke with Dickens. Later the same evening, Dickens unexpectedly arrived at the applicants' home and presented them with a business card which identified her as a licensed real estate agent affiliated with Re/Max Advantage. The applicants informed Dickens that they wished to sell their home, and Dickens explained that she could locate qualified buyers to lease the home with an option to buy.

The applicants considered this proposal, then contacted Dickens the next day at Re/Max Advantage. Dickens explained that she had a qualified buyer,

oasis

and that a seven percent commission would be due upon either execution of the lease or the final purchase.

The applicants subsequently ascertained that Re/Max Advantage was indeed a licensed real estate company. They then met with Dickens and leased their property, with an option to purchase, to Destiny Enterprises Property Management ("Destiny Enterprises"). Dickens explained, however, that this entity would not be the actual occupant or purchaser of the home, but was instead named as lessee in order to ensure that Re/Max Advantage would receive its commission. Dickens further explained that she and two other of Destiny Enterprises' four principals were affiliated with Re/Max Advantage. In addition, Destiny Enterprises and Re/Max Advantage have the same business address.

Several days after the lease-option was executed, Dickens informed the applicants that the qualified buyer, who was to be the actual lessee-purchaser, was scheduled to move into the home on April 15, 1987. In reliance upon this representation, the applicants purchased another home and moved their belongings. By April 15, 1987, however, Dickens had failed to transfer funds due the applicants, and the applicants learned that the agreement was terminated.

Thomas Zell next established that the applicants had brought suit against Dickens, Re/Max Advantage, Destiny Enterprises and two other employees of Re/Max Advantage, in common pleas case No. 146882. In their complaint, applicants alleged, *inter alia*, that Dickens had induced them to enter into the lease-option by fraudulently misrepresenting that she had located qualified buyers.

Finally, Zell testified that although the case was dismissed as to the remaining defendants, applicants had obtained a default judgment against Dickens in the amount of $10,000, which remained unsatisfied.

On July 24, 1990, the trial court awarded the applicants recovery from the fund, in the amount of $10,000. The superintendent now appeals.

## II

"The trial court erred as a matter of law in finding that plaintiffs are entitled to recover from the Real Estate Recovery Fund where the licensee, dealing on her own account, was not acting in such capacity as a real estate licensee as defined in R.C. § 4735.01(A)."

Within this assignment of error, the superintendent asserts that recovery was erroneously awarded because Dickens acquired the property on her own account and not as a "real estate salesman" within the definition of R.C.

4735.01, the applicants failed to demonstrate which portion of the default judgment represents their actual and direct loss, the underlying judgment against Dickens was premised upon breach of the lease-option, and not misconduct in violation of R.C. Chapter 4735, and the applicants did not diligently pursue their remedies against Re/Max Advantage and Destiny Enterprises.

R.C. 4735.12 governs the Real Estate Recovery Fund and provides in relevant part as follows:

"(B) When any person * * * obtains a final judgment in any court of competent jurisdiction against any *broker* or *salesman* licensed under this chapter, on the *grounds of conduct that is in violation of this chapter or the rules adopted under it,* that occurred after March 4, 1975, *and that is associated with an act or transaction of a broker or salesman specified or comprehended in division (A) or (C) of section 4735.01* of the Revised Code, such person may file a verified application, as described in this division, in any court of common pleas for an order directing payment out of the real estate recovery fund of the portion of the judgment that remains unpaid and that represents the actual and direct loss sustained by the applicant. * * *

" * * *

"The court shall order the superintendent to make such payments out of the fund when the person seeking the order has shown all of the following:

"(1) He has obtained a judgment, as provided in this division;

"(2) All appeals from the judgment have been exhausted and he has given notice to the superintendent, as required by division (C) of this section;

"(3) He is not a spouse of the judgment debtor, or the personal representative of such spouse;

"(4) He has diligently pursued his remedies against all the judgment debtors and all other persons liable to him in the transaction for which he seeks recovery from the fund;

"(5) He is making his application not more than one year after termination of all proceedings, including appeals, in connection with the judgment."

The term "real estate broker" in turn:

"includes any person, partnership, association, or corporation, foreign or domestic, who *for another,* whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

"(1) Sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of any real estate;

"(2) Offers, attempts, or agrees to negotiate the sale, exchange, purchase, rental, or leasing of any real estate;

"* * * *

"(6) Advertises or holds himself out as engaged in the business of selling, exchanging, purchasing, renting, or leasing real estate;

"(7) Directs or assists in the procuring of prospects of the negotiation of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate[.]" R.C. 4735.01(A).

The term "real estate salesman":

"means any person associated with a licensed real estate broker to do or to deal in any acts or transactions set out or comprehended by the definition of a real estate broker, for compensation or otherwise." R.C. 4735.01(C).

The term "real estate salesman" does not include, however:

"a person, partnership, association, or corporation, or the regular employees thereof or limited real estate broker or limited real estate salesman, who performs [the previously enumerated] acts or transactions * * * whether or not for, or with the intention, in expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

"(1) With reference to real estate situated in this state or any interest in it owned by such person, partnership, association, or corporation, or acquired on his own account in the regular course of, or as an incident to the management of the property and the investment in it[.]" R.C. 4735.01(K).

Finally, R.C. 4735.18 lists causes for suspension or revocation of a real estate license:

"[T]he superintendent of real estate * * * shall suspend or revoke the license of any licensee who, in his capacity as a real estate broker or salesman, or limited real estate broker or salesman, or in handling his own property, is found guilty of:

"(1) Knowingly making any misrepresentation;

"(2) Making any false promises with intent to influence, persuade, or induce[.]"

Conduct falling within the scope of this statute, moreover, is "conduct that is in violation" of R.C.Chapter 4735.01, within the meaning of R.C. 4735.12. *Krejci v. Clark* (1989), 58 Ohio App.3d 76, 77, 568 N.E.2d 737, 738.

Thus, a trial court should order recovery from the Real Estate Recovery Fund pursuant to R.C. 4735.12 where the applicant has obtained a judgment against a licensed broker or salesman on the grounds of misconduct in violation of R.C. Chapter 4735, and also demonstrates that he has met all five criteria set forth in R.C. 4735.12(B). *Dent v. Van Winkle* (1987), 30 Ohio St.3d 80, 83, 30 OBR 228, 230, 507 N.E.2d 345, 348.

We turn next to the arguments raised here by the superintendent. With respect to the argument that the applicants failed to demonstrate which portion of the default judgment against Dickens represents their actual and direct loss, we note that the unrefuted evidence established that the actual loss was in excess of the amount of the default judgment. Accordingly, this argument lacks support in the record and is rejected. *L.A. & D., Inc. v. Bd. of Lake Cty. Commrs.* (1981), 67 Ohio St.2d 384, 388, 21 O.O.3d 242, 244, 423 N.E.2d 1109, 1112.

■ With respect to the argument that Dickens did not acquire the property "for another" but rather acquired the property on her own account as lessee or purchaser, we note that the Plain Dealer advertisement clearly indicates that Dickens was acting as the agent of Re/Max Advantage in connection with the execution of lease options, that the applicants contacted Dickens through Re/Max Advantage, and that the applicants negotiated with Dickens as the agent of Re/Max Advantage. Further, although Destiny Enterprises was the named lessee, the unrefuted evidence established that this entity was acting on behalf of Re/Max Advantage, which shared its business address. While it was further shown that Dickens had an interest in Destiny Enterprises, it was also established that Destiny Enterprises was involved merely to guaranty Re/Max Advantage's commission, and this further supports applicants' claim that Dickens acted for another. Cf. *Krejci v. Clark, supra* (where the evidence demonstrated that the real estate licensee had an interest in the real estate company which purchased the applicant's home, the licensee's collection of a commission conclusively established that she did not purchase the house on her own account, but did so for the company). Accordingly, this argument is without merit.

The superintendent urges us to find to the contrary, pursuant to *Ball v. Ritenour* (1989), 46 Ohio App.3d 88, 546 N.E.2d 479, and *Schoen v. McClenaghan* (May 21, 1986), Hamilton App. C–850391, unreported, 1986 WL 5962. These cases are inapplicable, however, as the evidence presented in both cases clearly established that the real estate licensee was a party to the underlying transaction, and was not required to act, and did not act, for another as a licensed real estate agent.

■ As to the superintendent's further contention that the applicants were not entitled to recovery because their prior judgment against Dickens was premised upon a breach of contract and not conduct in violation of R.C. Chapter 4735, we note that the complaint specifically alleged that Dickens had induced the applicants to enter into the lease by fraudulently misrepresenting to them that she had qualified buyers. This allegation enumerates violations of R.C. 4735.18(A)(1) and (2) and therefore renders the judgment within the scope of R.C. 4735.12. See *Krejci v. Clark, supra.*

■ With regard to the superintendent's final argument, that the applicants may not recover since they failed to diligently pursue their remedies against Re/Max Advantage and Destiny Enterprises, it is clear that Dickens acted as agent for Re/Max Advantage, and also as representing Destiny Enterprises. Under these circumstances, there is vicarious liability and applicants have failed to demonstrate, pursuant to R.C. 4735.12(B)(4), that they have diligently pursued their remedies against these other entities. Cf. *Yeager v. Inland Mut. Ins. Co.* (June 17, 1982), Cuyahoga App. 43968, unreported, 1982 WL 2431. Thus, with no evidence going to this essential element of the application, recovery should have been denied. R.C. 4735.12(B). The assigned error is therefore sustained.

*Judgment reversed.*

SPELLACY and KRUPANSKY, JJ., concur.