Virgil BEDOW, et al., Respondent,

v.

Randy J. WATKINS, Respondent,

State of Minnesota Real Estate Education, Research and Recovery Fund, Appellant.

No. C7–95–484.

Court of Appeals of Minnesota.

Nov. 14, 1995.

Review Granted Jan. 25, 1996.

James Anderson, Marshall, for respondent.

Randy J. Watkins, Sunberg, pro se.

Hubert H. Humphrey III, Attorney General, Michael A. Sindt, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and RANDALL and DAVIES, JJ.

## OPINION

RANDALL, Judge.

The Commissioner of Commerce appeals from the trial court's award of $53,950 from the Real Estate Education, Research and Recovery Fund (the Fund) to Virgil and Avis Bedow, arguing that real estate sales agent Randy Watkins did not engage in acts requiring a real estate license, that the Bedows did not exercise due diligence in attempting to collect from Watkins, and that the Bedows are barred from recovery under the Fund by the "unclean hands doctrine." We affirm.

## FACTS

In 1985, Virgil and Avis Bedow had a distressed farm operation. On November 29, 1985, the Bedows entered into a written agreement with Randy Watkins, which provided that Watkins would "assist client with the farm financial matters," for which he would be paid a $1,200 retainer plus $25 per hour plus expenses.

In a letter, dated March 18, 1986, the Commissioner of Commerce informed Watkins that Chapter 82 of Minnesota Laws require[s] that anyone who collects a fee from an individual for the purpose of finding a real estate related loan must have a real estate license. It is obvious that you have been engaging in that activity and since you do not have a license you are in violation of the law.

On February 3, 1987, Watkins obtained a real estate sales agent's license.

On August 10, 1987, the Bedows received notice of foreclosure on two parcels of land they owned. On January 27, 1988, both parcels were sold pursuant to a Sheriff's sale.

During the summer of 1988, Watkins had a quitclaim deed drawn. He then had the deed signed by the Bedows. That deed purported to transfer farm property from the Bedows to himself. A second deed was drawn to transfer the property back to the Bedows. The deeds were drawn, signed, and notarized but never filed. Watkins admitted that the drawing of the deeds went slightly "over the line" of just consulting.

On August 18, 1988, the Bedows transferred $65,000 to Watkins in the form of two checks made out to Mid–State Marketing. Virgil Bedow testified the intended purpose of the transfer of $65,000 to Watkins was so "that we could eventually buy this land back from Equitable, and that [Watkins] would keep it."

The checks were deposited in an account of Mid–State Consulting. A substantial amount of the money was used to cover a check dated August 15, 1988, in the amount of $55,354 payable to the Arnold McDowell Trust Account as part of a settlement of a lawsuit against Watkins and Gary Collins. The Bedows were not involved in that debt of Watkins.

In December 1988, the Bedows applied to the Farm Home Administration (FmHA) for relief, and obtained a Shared Appreciation Mortgage. The Bedows did not list the $65,000 as an asset on their application.

On October 25, 1993, the Bedows obtained a default judgment against Watkins based on breach of contract. The Bedows collected $11,050 from Watkins. The Bedows filed an application for payment from the Fund. The trial court ordered the Fund to pay the Bedows $53,950. That amount represented the $65,000 Watkins misappropriated from the Bedows minus the $11,050 restitution the Bedows managed to collect from Watkins.

## ISSUES

1. Did the trial court err in concluding that Watkins's receipt of $65,000 and his other actions constituted real estate activity for which a real estate license is required under Minn.Stat. Ch. 82?

2. Did the trial court err in finding that the Bedows diligently pursued remedies against all other persons liable in the transaction under Minn.Stat. § 82.34, subd. 8(f) (1994)?

3. Does the "unclean hands doctrine" preclude the Bedows from recovery from the Real Estate Education, Research and Recovery Fund under Minn.Stat. § 82.34 (1994)?

## ANALYSIS

■ The findings of a trial court sitting without a jury are entitled to the same weight as a jury verdict and will not be set aside unless they are clearly erroneous. *Duluth Herald & News Tribune v. Plymouth Optical,* 286 Minn. 495, 497, 176 N.W.2d 552, 555 (1970). A reviewing court, however, need not defer to the trial court's determination of questions of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### 1. Real estate activity

The Commissioner argues the evidence in the record does not support the trial court's finding that Watkins's receipt of the $65,000 involved acts for which a real estate license is required. If the Commissioner's contentions are correct, then the Fund would not be liable to the Bedows.

The trial court found that Watkins's receipt of the $65,000, taken into account with all the facts, constituted real estate activity requiring a real estate license. Specific acts of Watkins included, without limitation, the management of an asset of the Bedow farm

operation, the handling of trust funds, and acts indirectly involved in the finding or negotiation of a debt restructuring with FmHA.

The Minnesota Real Estate Education, Research and Recovery Fund provides:

> When any aggrieved person obtains a final judgment in any court of competent jurisdiction * * * against an individual licensed under this chapter, on grounds of fraudulent, deceptive, or dishonest practices, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and *performed acts for which a license is required* under this chapter * * * the aggrieved person may, upon the judgment becoming final, and upon termination of all proceedings, including reviews and appeals, file a verified application * * * for an order directing payment out of the fund of the amount of the actual and direct out of pocket loss in the transaction.

Minn.Stat. § 82.34, subd. 7 (1994) (emphasis added). For the Bedows to recover under the statute, Watkins's taking of their $65,000 must have been connected to real estate activity requiring a real estate license.

The Commissioner raises two arguments why Watkins's receipt of the $65,000 did not constitute activity requiring a real estate license. First, the Commissioner argues Watkins was not acting *on behalf* of his real estate broker when he took the $65,000 from the Bedows. Minn.Stat. § 82.17, subd. 5 (1994), defines "real estate salesperson" as "one who acts *on behalf* of a real estate broker in performing any act authorized by this chapter to be performed by the broker." (Emphasis added.)

We are not persuaded by the Commissioner's literal statutory interpretation. It could lead to absurd results. The legislature does not intend a result that is absurd or unreasonable. Minn.Stat. § 645.17(1) (1994). Under the Commissioner's interpretation, in cases of fraud, claimants whose real estate sales agents acted in collusion with their broker would be protected. Claimants whose realtors acted alone could be denied protection. In light of the statute's remedial purposes, no logical reason exists why the statute would protect one group of claimants and not the other. The only logical reading of Minn.Stat. § 82.17, subd. 5, is that it was written to define a sales agent as someone (obviously) who is not a real estate broker and, therefore, has to be connected to a real estate broker to deal legitimately in real estate. Other pertinent Minnesota statutes, not at issue here, make it clear that real estate sales agents have to have an affiliation with and work under the authority of a licensed real estate broker. This definition was never meant to be read, and could not have possibly have been meant to be read, as requiring that before sales agents could be held accountable for their acts, it was necessary to prove that their brokers had colluded and approved of those acts. Or put another way, section 82.17, subd. 5, merely describes a sales agent as opposed to a real estate broker (who can act alone). It is not meant to describe only those activities for which a real estate sales agent can be held liable and the fund accountable.

Second, the Commissioner argues that Watkins's receipt of the $65,000 does not constitute real estate activity for which a real estate license is required. Minn.Stat. § 82.19, subd. 1 (1994), provides that "[n]o person shall act as a real estate broker, salesperson, or real estate closing agent unless licensed herein provided." A real estate broker is defined as any person who:

> (a) for another and for commission, fee, or other valuable consideration or with the intention or expectation of receiving the same *directly or indirectly lists, sells, exchanges, buys, or rents, manages, or offers or attempts to negotiate a sale, option, exchange, purchase or rental of an interest or estate in real estate, or advertises or holds out as engaged in these activities;*

> (b) for another and for commission, fee, or other valuable consideration or with the intention or expectation of receiving the same directly or indirectly *negotiates or offers or attempts to negotiate a loan, secured or to be secured by a mortgage or other encumbrance on real estate;*

> (c) for another and for commission, fee, or other valuable consideration or with the intention or expectation of receiving the

same directly or indirectly lists, sells, exchanges, buys, rents, *manages, offers or attempts to negotiate a sale, option, exchange, purchase or rental of any business opportunity or business, or its good will, inventory, or fixtures, or any interest therein;*

Minn.Stat. § 82.17, subd. 4 (1994) (Emphasis added.)

The experts at trial disagreed as to whether Watkins's activities required real estate licensing. John Larson, former Commissioner of Securities and Real Estate, testified that the trial exhibits provided substantial evidence that the activities Watkins performed required a real estate license. The following is a list of the exhibits that, in Larson's opinion, evidenced activities requiring a real estate license: (1) the initial agreement entered into by Virgil Bedow and Watkins; (2) the March 18, 1986, letter from the Department of Commerce informing Watkins that the activities he was engaging in required a real estate license; and (3) a letter dated August 11, 1988, from Scott Strouts to Watkins discussing the quitclaim deed and the deeds themselves.

Larson testified there is evidence Watkins actively participated in negotiating interests in real estate mortgages: (1) a letter dated September 2, 1986, from Norwest Banks to Watkins listing terms on which the bank would be willing to make a loan to Bedow farms and Virgil Bedow personally; (2) a letter dated November 13, 1986, from Norwest Banks to Watkins commenting on the proposed agreements on the Bedow farm financing; and (3) a letter dated December 28, 1988, from Watkins to Rodney DeGraaf, FmHA representative, enclosing the Bedows' farm application.

In contrast, Gary LaVasseur, Deputy Commerce Commissioner, and Professor George Carvell testified Watkins did not engage in any activity that required a real estate license. LaVasseur testified Watkins's dealings resembled those of a "financial planner." LaVasseur, however, testified that if the $65,000 given was intended to be used to buy back the Bedow farm, then a real estate license would be required. Professor Carvell testified Watkins acted as a "farm advocate" and a "financial planner."

■ The trial court credited Larson's expert opinion. Larson's testimony and the exhibits on which he based his opinion support the trial court's findings. Confronted with a "battle of the experts," the trial court did not err in concluding Watkins engaged in activity requiring a real estate license. The trial court found that Watkins was managing the Bedows' farm operation; that Watkins handled trust funds; and that Watkins was directly involved in the negotiation of debt restructuring with the FmHA. "Findings of fact * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R.Civ.P. 52.01 (1995). The trial court's findings are supported by evidence in the record and are not clearly erroneous. Based upon these findings, the trial court concluded Watkins engaged in activity requiring a real estate license. Because the trial court's findings satisfy the requirements of the statute, the trial court did not err in making its conclusion. *See* Minn.Stat. § 82.17, subd. 4 (stating activities requiring a real estate license).

## 2. Diligence

■ The Commissioner next argues the trial court erred in finding the Bedows diligently pursued remedies against all other persons liable in the transaction, as required under Minn.Stat. § 82.34, subd. 8(f). The statute requires that before the court can order the Fund to make a payment, the claimant is required to show, among other things, that the claimant

has diligently pursued remedies against all the judgment debtors and all other persons liable to that person in the transaction for which that person seeks recovery from the real estate education, research and recovery fund.

Minn.Stat. § 82.34, subd. 8(f). The statute, however, does not require "all conceivable collection steps be taken against each of the partners." *Milton v. Haddox,* 349 N.W.2d 361, 363 (Minn.App.1984). "What is required is a showing of diligence, and that is to be

evaluated in the light of the remedial nature of the legislation." *Id.* The trial court is granted "considerable discretion" in determining whether the efforts of the claimant constitute a sufficient level of diligence. *Id.* at 362.

The Commissioner argues the failure to attempt to recover from Watkins's business partner, Gary Collins, or his real estate broker, Darwin Hetland, does not meet the required showing of diligence.

Minn.Stat. § 323.13 (1994) could potentially have attributed Watkins's actions to the partnership, rendering Gary Collins as a partner, liable to the Bedows. Minn.Stat. § 323.13 provides the partnership is bound to make good the loss:

> (2) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership.

If either Mid–State Marketing or Mid–State Consultants received the $65,000 in the course of its business, Gary Collins could be jointly liable for the debts to the Bedows.

The Commissioner also argues the Bedows should have pursued recovery against Watkins's broker, Darwin Hetland. The Commissioner argues because Darwin Hetland was Watkins's broker, Darwin Hetland is thus automatically liable for Watkins's wrongdoing. The Commissioner relies on Minn.Stat. § 82.20, subd. 5 (1994), which states:

> Each broker shall be responsible for the acts of any and all of the broker's sales people and closing agents while acting as agents on the broker's behalf.

The Minnesota Supreme Court held, however, that the Real Estate Brokers Act, Chapter 82, does not create a private cause of action. *Semrad v. Edina Realty, Inc.,* 493 N.W.2d 528, 532 (Minn.1992). Therefore, the Bedows did not have a claim against Darwin Hetland under Chapter 82.

■ Even assuming Gary Collins was liable as a partner to the Bedows, however, the statute does not require that the Bedows pursue every partner. *See Milton,* 349

N.W.2d at 363. For nearly six years, the Bedows tried to collect the money from Watkins. During these six years, the Bedows managed to collect a modest amount from Watkins. In light of the trial court's broad discretion and in light of the remedial nature of the statute, the trial court did not abuse its discretion in holding the Bedows' efforts were sufficiently diligent.

### 3. Doctrine of Unclean Hands

■ The Commissioner also argues the "unclean hands doctrine" precludes the Bedows from recovery under the Fund. The "unclean hands doctrine" will be invoked against a party whose conduct has been "unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable." *Creative Communications Consultants v. Gaylord,* 403 N.W.2d 654, 657–58 (Minn.App.1987).

The Bedows testified that the transfer was intended for the repurchase of their property. The Bedows further testified that when they filled out the FmHA application, they realized Watkins had absconded with the $65,000 and that listing the funds as an actual asset to them would have been inaccurate.

Watkins testified the transfer of the $65,-000 by the Bedows was an attempt to defraud the FmHA. Watkins, however, is not a disinterested party. He has an interest in hoping the Bedows do not recover under the Fund. If the Bedows recover under the Fund, Watkins would be required to reimburse the state twice the amount paid from the Fund before reinstatement of his license. *See* Minn.Stat. § 82.34, subd. 13 (1994) (stating no salesperson "shall be granted reinstatement until the person has repaid in full * * * twice the amount paid from the fund.")

This issue partly rests upon the credibility of the witnesses. Due regard should be given to the opportunity of the trial court to judge the credibility of witnesses. *Moore v. Dubbin,* 374 N.W.2d 225, 227 (Minn.App. 1985). The trial court accepted the Bedows' testimony. In light of the conflicting testimony, the trial court did not err in holding the "doctrine of unclean hands" did not pre-

clude the Bedows from recovery under the Fund.

## DECISION

The trial court did not err in determining that Watkins's receipt of the $65,000 constituted real estate activity requiring a real estate license; that the Bedows diligently pursued remedies against persons potentially liable in the transaction; and that the "unclean hands doctrine" does not preclude the Bedows from recovery from the Real Estate Education, Research and Recovery Fund.

**Affirmed.**