Virgil **BEDOW**, et al., Respondents,

v.

Randy J. **WATKINS**, Respondent,

**State of Minnesota Real Estate Education, Research and Recovery Fund, Petitioner, Appellant.**

No. C7-95-484.

Supreme Court of Minnesota.

Aug. 15, 1996.

Hubert H. Humphrey, Attorney General, Michael A. Sindt, St. Paul, for appellant.

James Anderson, Marshall, Randy Watkins, Sunberg, for respondent.

## OPINION

GARDEBRING, Justice.

This appeal involves the "diligent pursuit" requirements imposed upon claimants who seek to recover funds from the Minnesota Real Estate Education, Research and Recovery Fund. Minn.Stat. § 82.34, subd. 7 (1994). The Fund was established in 1973 in part to pay unpaid judgments against real estate licensees, arising from actions covered by their real estate licenses. Minn.Stat. § 82.34 (1994); *Moe v. Centurion Inv. Co.*, 293 N.W.2d 826, 829 (Minn.1980). It is intended as a remedy of last resort, to be accessed when other potential sources of recovery are unavailable. To that end, claimants must meet several requirements, notably that they have "diligently pursued remedies against all the judgment debtors and all other persons liable to that person in the transaction for which that person seeks recovery from the real estate education, research and recovery fund." Minn.Stat. § 82.34, subd. 8.

Respondents Virgil and Avis Bedow sued Randy Watkins, a self-described "farm advocate" hired by the Bedows to assist them in their efforts to ameliorate their farm's financial condition, in order to recover funds that Watkins misappropriated from ·them. Watkins was unable to satisfy the default judgment the Bedows obtained against him and they sought reimbursement from the Fund. In the subsequent court proceeding, necessary to access Fund reimbursement, the trial court ruled in their favor.[1] The Fund disagreed with this ruling, but on appeal, the court of appeals affirmed, holding that Watkins' actions came within the reach of the Fund statute and that the trial court did not abuse its discretion when it determined that the Bedows had exercised necessary dili-

---

1. The procedure for seeking reimbursement from the Fund is straightforward. The Fund claimant must first obtain a judgment against the person licensed under the real estate licensing statute, whose fraudulent, deceptive, or dishonest practices resulted in injury to the claimant. Once the judgment is final, the claimant must file a verified application in the judgment court seeking an order directing the Fund to pay out the necessary reimbursement. Minn.Stat. § 82.34, subd. 7 (1994). A copy of the verified application must be served on the Commissioner of Commerce and, subsequently, the court must hold a hearing. The claimant must make a particularized showing that he or she meets the statutory requirements entitling him or her to reimbursement. *Id.* at subds. 7 & 8. The Commissioner, on behalf of the Fund, may contest this showing at this hearing. *Id.* at subd. 10.

gence in their efforts to seek alternative recovery. We reverse.[2]

Randy Watkins and Gary Collins were partners in a "farm consulting" business known as Mid–State Consulting (Mid–State). Watkins' participation in partnership activities consisted largely of developing financial spreadsheets detailing his clients' cash flow and then working out a payment plan acceptable to creditors. Watkins was licensed as a real estate salesperson under the supervision of Darwin Hetlund, owner of Eldrid Realty, although the record suggests that he did not engage in any activities typical to the real estate sales business.

In November 1985, the Bedows contracted with Mid–State for assistance in the financial restructuring of their farming operation. The Bedows had significant mortgage debt obligations, to Equitable Life Assurance Society and to the Farmer's Home Administration (FmHA), which they did not believe they would be able to meet. Watkins attempted to reach an accommodation with the FmHA regarding the debt encumbering the Bedows' land.

Watkins advised the Bedows by letter that they should not "show too much cash flow" to the FmHA as this would enable them to receive more favorable terms, should the loan write-down be granted. Accordingly, on the advice of Watkins, they transferred $65,000 to Mid–State. The Bedows also signed two deeds conveying title in lands they owned to Watkins, who in turn prepared two deeds conveying the land back to the Bedows. These deeds, however, were never filed. Watkins testified that the monetary and the real estate conveyances were both part of an effort to hide assets from the FmHA in order to receive more favorable loan restructuring terms.

Watkins, however, did not retain the transferred funds in trust. Instead, he used the funds to settle an outstanding Mid–State debt. When the Bedows sought to recover their money, Watkins stalled them with fictitious stories of nonexistent individuals who had mishandled the money; he eventually returned $10,000, gave them a promissory note for the remainder, and made $1050 in payments on the note. On October 25, 1993, the Bedows obtained a default judgment against Watkins. The Bedows' lawsuit was directed only at Watkins and did not include any claims against Collins, Mid–State, or Eldrid Realty.

Because Watkins could not pay, the Bedows immediately sought reimbursement from the Fund. The main issue at trial was whether Watkins' activities fell within the ambit of the real estate licensing statute, thus triggering potential recovery from the Fund. The trial court ruled in the Bedows' favor on this issue, as did the court of appeals. This issue was not appealed to us.

The Fund also asserted at trial that the Bedows had neglected other available avenues of potential recovery, namely Watkins' partner, Collins; their partnership, Mid–State; and Eldrid Realty, the business owned by Watkins' supervising broker, Hetlund. The statutory law of partnership liability and the real estate licensing statute, the Fund argued, might make either business or Collins liable for Watkins' misappropriation. At trial, Collins testified that he and Watkins were partners and that Watkins was acting within the normal course of their business when he took the money from the Bedows. There was, however, no testimony as to why the Bedows did not seek to recapture their lost funds from either Collins, Mid–State, or Eldrid Realty, though Mr. Bedow testified that he was aware of Watkins' partnership with Collins and association with Eldrid Realty.

The trial court concluded that Watkins fraudulently obtained the $65,000 from the Bedows through means requiring a real estate license, and ordered the Fund to reimburse the Bedows $53,950. The trial court also found that the Bedows had "taken all

---

**2.** Arguing that the state was late in filing its petition for review in this court, the Bedows moved to dismiss the petition for lack of jurisdiction. We denied this motion in our order granting the petition. While it is clear that the issue before this court is application of the "diligent pursuit" provisions of the Fund statute, the Bedows' brief addressed only their jurisdictional argument, which we resolved in our prior order. In the absence of any briefing on the substantive issue at hand, the court has relied on the Bedows' brief at the court of appeals.

possible steps to obtain the return of the $65,000 taken by Randy Watkins," but did not specifically address potential recovery from other parties involved in the transaction.

The Fund appealed to the court of appeals, which affirmed the trial court's conclusion that Watkins' activities did require a real estate license. *Bedow v. Watkins,* 539 N.W.2d 414, 417–18 (Minn.App.1995). The court of appeals also determined that the trial court did not abuse its discretion "in holding that the Bedows' efforts were sufficiently diligent." *Id.* at 418–19. To reach their decisions on the "diligent pursuit" question, both the trial court and the court of appeals relied on a previous court of appeals case concluding the statute's "diligent pursuit" requirement did not require that "all conceivable collections steps" be taken against each of the debtor's partners. *Milton v. Haddox,* 349 N.W.2d 361, 363–64 (Minn.App.1984).

██ The issue before us today, therefore, is whether the Bedows' efforts to recapture their funds met the threshold "diligent pursuit" requirement mandated by the statute. This question involves statutory interpretation; thus, our standard of review is de novo. *Ryan v. ITT Life Ins. Corp.,* 450 N.W.2d 126, 128 (Minn.1990).

The Bedows argue that their efforts were sufficiently diligent and point to their strenuous, but unsuccessful struggle to recover from Watkins. Recovery from Collins, Mid–State, or Eldrid Realty, they claim, is not possible because none of them is liable. According to testimony at trial, certain statements made by Watkins during his consulting with the Bedows were construed by them to indicate that he was acting on his own, outside of his role as Collins' partner, thus precluding liability for Collins and Mid–State. *See* Minn.Stat. § 323.08 (1994). Similarly, they argue, Eldrid Realty could not be liable because this court's decision in *Semrad v. Edina Realty, Inc.,* 493 N.W.2d 528 (Minn. 1992), indicates that a broker is not liable for the intentional torts of his salespersons. Therefore, pursuing any of these parties, they argue, would necessitate filing a frivolous lawsuit.

We are unwilling to accept the Bedows' testimony, without adequate evidentiary basis or legal analysis presented to the trial court, that recovery from Mid–State, Collins or Eldrid Realty was not possible. Furthermore, without deciding the question, we believe that there is a colorable legal argument that Mid–State, Collins, Eldrid Realty or some combination of these parties, were indeed liable for Watkins' fraudulent actions and thus, they should have been pursued as a condition precedent to the Bedows' effort to access the Fund.

We turn first to Collins, Watkins' partner in Mid–State, and Mid–State itself. The Bedows argue that Watkins led them to believe he was acting outside the boundaries of the usual manner of partnership business. According to trial testimony, Watkins told them not to mention the $65,000 to Collins because "Gary gets a little nervous about money matters." Based upon this and other, similar remarks, the Bedows argue they understood that Watkins was not acting on behalf of the partnership.

We do not think such testimony could be considered dispositive of the "diligent pursuit" issue, which is a legal matter to be decided by the court. Furthermore, it appears that a plausible argument exists for holding either Collins or Mid–State or both liable. The theory is a simple one; the Bedows contracted with the partnership for consulting services and were defrauded by Watkins, an agent of the partnership. Minn. Stat. § 323.08 (1994). The partnership is liable to an injured person when the injury is caused by the "wrongful act or omission of any partner acting in the ordinary course of the business of the partnership." Minn.Stat. § 323.12 (1994). Collins testified that Watkins' actions with the Bedows were in the ordinary course of business for the partnership. Thus, a viable theory exists for holding the partnership liable for the injury to the Bedows.

██ Similarly, Collins might be personally liable to the Bedows. It is settled law that partners are "jointly and severally liable" for

the debts chargeable to the partnership.[3] Minn.Stat. § 323.14, subd. 1(1) (1994). As noted above, Minnesota partnership law states that each partner is an agent of the partnership and that each act of a partner that is "apparently carrying on in the usual way the business of the partnership" is binding on the partnership. Minn.Stat. § 323.08; *see also* Minn.Stat. § 323.12. In addition, the partnership is bound to make good a loss when "one partner acting within the scope of apparent authority receives money or property and misapplies it." Minn.Stat. § 323.13(1) (1994). Collins' testimony, supported by other evidence, indicates that Watkins was not acting in a manner inconsistent with the usual practice of the business, nor did he act without the necessary authority to bind the partnership. Therefore, if the partnership lacks sufficient assets to answer for the injury to the Bedows, Collins may be personally liable.

Although lack of a complete evidentiary record on the factual issues pertinent to the liability of either Mid–State or Collins prevents a determination on this issue, there is likewise nothing in the record that precludes such liability or demonstrates the futility of pursuing such claims. Under the statute, it is the obligation of the Fund claimant, here the Bedows, to make such a showing and they have utterly failed to meet this burden.

Our conclusion is similar as to the potential liability of Hetlund's company, Eldrid Realty.[4] Watkins was a real estate salesperson under the supervision of Hetlund, a real estate broker and an agent of Eldrid Realty. A supervising broker is responsible for the "acts of any and all of the broker's sales people * * * while acting as agents on the broker's behalf." Minn.Stat. § 82.20, subd. 5 (1994). While Watkins may not have been a real estate salesperson in the traditional sense, he was operating within the statutory definition of a real estate salesperson and Eldrid Realty, in the person of Hetlund, was responsible for his actions. *Id.* Indeed, this court has held that a real estate broker is responsible for the actions of his agent despite having no knowledge of the agent's transgressions. *Handy v. Garmaker,* 324 N.W.2d 168, 173 (Minn.1982).

The Bedows' position, with which the court of appeals agreed, is that our holding in *Semrad v. Edina Realty, Inc.,* 493 N.W.2d 528, 532 (Minn.1992), precludes consideration of Hetlund as a potentially liable party. We disagree with the breadth of their conclusion. Although *Semrad* held that the Real Estate Brokers Act, Minn.Stat. §§ 82.17–.34 (1987), does not create a private cause of action, nothing in the case need be read as impliedly overruling the long-standing common-law notion that a principal is liable for the act of an agent committed in the course and within the scope of agency and not for a purpose personal to the agent. *See Handy,* 324 N.W.2d at 173; *Norby v. Bankers Life Co. of Des Moines, Iowa,* 304 Minn. 464, 468, 231 N.W.2d 665, 668 (1975); Restatement (Second) of Agency § 140 (1958).

Again, absent an adequate record below, we do not hold that Eldrid Realty is liable for Watkins' misappropriation of the Bedows' money. But we cannot preclude that possibility. Thus, the Bedows have not met their burden as to "diligent pursuit" of Eldrid Realty, either.

■ In the final analysis, the important conclusion regarding Collins, Mid–State and Eldrid Realty is that they *might* have been liable to the Bedows. At minimum, "diligent pursuit" requires some evidence of the claimant's pursuit of all potentially liable parties or legal and factual analysis as to the futility of such pursuit.[5] In the absence of either,

---

**3.** Watkins testified at trial and in a deposition that he didn't know whether Mid–State was a partnership registered with the Secretary of State. Even if it was not duly registered, the above analysis still applies as Collins and Watkins may be deemed to be partners by estoppel. *See* Minn.Stat. § 323.15 (1994).

**4.** Hetlund may be personally liable if Eldrid Realty is unable to answer the debt, but such a determination depends on Hetlund's relationship with his company (*e.g.,* he may be shielded by the corporate veil). The record provides no information on the nature of this relationship.

**5.** Similar decisions of other state courts that have considered this question of what diligence is a proper prerequisite to recovery under similar real estate licensing statutes buttress our conclusion. These courts have concluded that some affirmative evidence why alternative avenues of recovery were not pursued is necessary before

we conclude that the Bedows did not meet their burden as to the "diligent pursuit" requirement of Minn.Stat. § 82.34, subd. 8(f). Thus, we reverse the court of appeals.

Reversed.

those defrauded can recover from the state. For example, in California, upon whose statute Minnesota's was based, the court of appeals ruled that discovery and evidence regarding why seemingly obvious alternative avenues of recovery were not pursued was necessary. *Fine v. Southern Cal. Business Sales, Inc.*, 190 Cal. App.3d 480, 235 Cal.Rptr. 489, 491 (1987). The court stated that "[i]f the [fund claimants] wish to claim due diligence in not pursuing the poten-tial individual defendants * * * it behooves them to present some evidence supporting [their claim that pursuit was not warranted]." *Id.* An Ohio court of appeals has ruled similarly, holding that applicants to that state's real estate recovery fund must demonstrate that they have pursued remedies available against the agent's broker and the agent's own company. *Zell v. Ohio Superintendent of Real Estate,* 79 Ohio App.3d 297, 607 N.E.2d 99, 103 (1992).