*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0686**

In the Matter of the Real Estate License of
Mark Dziuk, License No. 40213396.

**Filed January 12, 2015
Affirmed
Kirk, Judge**

Commissioner of Commerce
File No. 40213396

Bruce A. Rasmussen, Bruce A. Rasmussen & Associates, LLC, Minneapolis, Minnesota (for appellant Mark Dziuk)

James J. Kretsch, Jr., John D. Reddall, Kretsch & Pace, PLLC, Lakeville, Minnesota (for respondent James van Riemsdyk)

Lori Swanson, Attorney General, Christopher M. Kaisershot, Assistant Attorney General, St. Paul, Minnesota (for respondent Department of Commerce, Real Estate Education, Research, and Recovery Fund)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In this certiorari appeal from the commissioner of commerce's decision to grant

payment to respondent James van Riemsdyk from respondent Department of Commerce,

Real Estate Education, Research, and Recovery Fund (the recovery fund), thereby suspending appellant Mark Dziuk's real estate license, Dziuk argues that (1) the commissioner exceeded his statutory authority by approving payment of van Riemsdyk's claim from the recovery fund and (2) van Riemsdyk's claim for payment is precluded by res judicata. We affirm.

## FACTS

In March 2012, Dziuk agreed to sublease his Minneapolis apartment to van Riemsdyk from May through August 2012. During the negotiation of the terms of the sublease, Dziuk told van Riemsdyk that he could sign a standard Minnesota residential lease, stating, "Again, I am a MN registered Real Estate Broker – I own my own real estate company and abide by these rules and regulations." Van Riemsdyk signed a sublease agreement that provided for monthly rent of $5,500 and a security deposit of $1,500, for a total prelease deposit of $7,000. He also issued two checks to Dziuk: a $5,500 check with "May Rent" written on the memo line and a $1,500 check with "Security Deposit" written on the memo line. Dziuk did not sign the sublease agreement, but he cashed both of the checks.

In April, Dziuk sent an email to van Riemsdyk requesting that van Riemsdyk pay him an additional $250 per month because his landlord had raised his rent. Dziuk also stated that his landlord might require rent to be paid in advance. Van Riemsdyk objected to the changes in the terms of the sublease and requested that Dziuk release him from the sublease and refund the $7,000 prelease deposit. Dziuk emailed the following response to van Riemsdyk:

2

> The [sub]lease was never signed by me nor accepted by [the landlord]; however, your 4 month reservation has been canceled, per your request, leaving a 4 month rental void and serious expense. Your reservation deposit is non-refundable and will be used to cover the rental loss created by your [cancellation]. Hopefully, a replacement tenant can be found, in a timely fashion, to cover the remaining 4 month [sub]lease expense.

Dziuk and van Riemsdyk then exchanged a series of emails referring to discussions between van Riemsdyk's real estate agent and Dziuk's landlord regarding whether Dziuk was allowed to sublease his apartment without the landlord's preapproval. Van Riemsdyk asserted that he learned from Dziuk's landlord that Dziuk was not allowed to sublease his apartment. Dziuk responded that he could sublease the apartment, although he acknowledged that the landlord had not yet approved the sublease to van Riemsdyk. Van Riemsdyk continued to request a refund of the $7,000 he had paid Dziuk.

In July 2012, van Riemsdyk brought a claim in conciliation court against Dziuk and his real estate company, 26.2 Blue, LLC, requesting $7,500 in damages plus $70 in filing fees. Dziuk counterclaimed against van Riemsdyk, alleging that van Riemsdyk defamed him to his landlord, causing his landlord to cancel his option to extend his lease and depriving him of the profits from any future sublease. The conciliation court awarded judgment to van Riemsdyk in the amount of $7,070. Dziuk demanded removal to the district court.

Van Riemsdyk moved for summary judgment. Following a hearing, the district court granted van Riemsdyk's summary judgment motion and dismissed Dziuk's

counterclaim with prejudice. The district court ordered court administration to enter judgment against Dziuk in the amount of $10,500, which consisted of the $7,000 prelease deposit plus a statutory penalty of one-half that amount, $3,500. The district court also determined that van Riemsdyk was entitled to recover $542 in costs. But the district court denied the summary judgment motion regarding 26.2 Blue, LLC, determining that Dziuk attempted to sublease the apartment in his individual capacity only.

In February 2014, van Riemsdyk applied for accelerated payment of $10,000 from the recovery fund. He argued that Dziuk was a licensed real estate broker at the time he negotiated the sublease with van Riemsdyk, and Dziuk "used that position of power and influence to steal $7,500 from" him. Van Riemsdyk alleged that he had tried to collect the judgment from Dziuk but had been unsuccessful.

In April, a deputy commissioner of commerce approved payment of $7,492 to van Riemsdyk from the recovery fund, and a representative of the commissioner sent a letter to Dziuk notifying him that van Riemsdyk's claim could be paid within 15 days unless Dziuk notified the commissioner that he was appealing the judgment. The letter informed Dziuk that payment of the claim from the recovery fund would result in the automatic suspension of Dziuk's real estate license.

Dziuk objected, arguing that the real estate transaction involving van Riemsdyk did not require a real estate license and that he acted in his individual capacity when he entered into the sublease agreement. The commissioner's representative sent a second letter to Dziuk, stating that "the record supports the determination to pay Mr. van Riemsdyk from the" recovery fund. The letter further notified Dziuk that he had to

4

provide the commissioner with a copy of the satisfaction of the judgment filed with the district court or the commissioner would move forward with the claim. This certiorari appeal by Dziuk follows.

**D E C I S I O N**

Appellate courts review an agency's findings in the light most favorable to the decision, and will not disturb those findings if there is evidence to sustain them. *George A. Hormel & Co. v. Asper*, 428 N.W.2d 47, 50 (Minn. 1988). Appellate courts are not bound by an agency's legal conclusions and are free to exercise independent judgment. *Id.* "However, an agency's interpretation of the statutes it administers is entitled to deference and should be upheld, absent a finding that it is in conflict with the express purpose of the [statute] and the intention of the legislature." *Id.*

**I.     The commissioner did not exceed his statutory authority by approving payment of van Riemsdyk's claim from the recovery fund.**

Dziuk argues that the commissioner exceeded his statutory authority when he approved an accelerated payment of van Riemsdyk's claim from the recovery fund because he determined that Dziuk had committed fraud, deceptive, or dishonest practices, or conversion of trust funds. *See* Minn. Stat. § 82.86, subds. 7, 8 (2014). As a result, Dziuk argues that the commissioner's decision is null and void. The recovery fund was established by the legislature in 1973 "in part to pay unpaid judgments against real estate licensees, arising from actions covered by their real estate licenses." *Bedow v. Watkins*, 552 N.W.2d 543, 544 (Minn. 1996); *see* Minn. Stat. § 82.86, subds. 2, 6, 7 (2014). The money in the recovery fund accrues from fees assessed on real estate licenses, and it is

administered by the commissioner of commerce. Minn. Stat. §§ 82.55, subd. 5, .86, subd. 2 (2014).

An "aggrieved person" may apply for payment from the recovery fund if he or she obtains a final judgment against a licensee "on grounds of fraudulent, deceptive, or dishonest practices, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required." Minn. Stat. § 82.86, subd. 7. The aggrieved person must file a verified application with the district court that entered the judgment requesting an order directing payment from the recovery fund. *Id.* The district court then must conduct a hearing upon the aggrieved person's application. *Id.*, subd. 9 (2014). But the commissioner may pay a claim from the recovery fund that does not exceed $10,000 on an accelerated basis. *Id.*, subd. 8(a). In that situation, the aggrieved person is not required to obtain an order from the district court directing payment from the recovery fund and the district court is not required to hold a hearing. *Id.* Instead, the aggrieved person must file a verified application with the commissioner and the commissioner must notify the licensee that the claim will be paid within 15 days from the date of the notice unless the licensee notifies the commissioner before that time that he or she commenced an appeal of the judgment. *Id.*, subd. 8(b), (c). Under either procedure, the licensee's license is automatically suspended when the commissioner pays the claim. *Id.*, subds. 8(c), 13 (2014).

Dziuk contends that the commissioner did not have the authority to pay van Riemsdyk's claim under the accelerated procedure because the district court did not enter judgment against Dziuk "on grounds of fraudulent, deceptive, or dishonest practices, or

conversion of trust funds." Dziuk also contends that van Riemsdyk's complaint in the district court did not allege that Dziuk engaged in fraud, deceptive or dishonest practices, or conversion of trust funds. Because the district court did not make that specific finding in granting judgment to van Riemsdyk and the commissioner does not have an adjudicative function under the accelerated procedure, Dziuk argues that the commissioner could not grant van Riemsdyk's application for payment from the recovery fund. In response, the commissioner argues that he has "discretionary authority to evaluate and approve 'accelerated' applications to the [recovery fund]." The commissioner further argues that the requirement that the district court's judgment be based on "fraudulent, deceptive, or dishonest practices, or conversion of trust funds," must be liberally construed to effectuate the remedial purpose of the recovery fund, and the record establishes that Dziuk engaged in fraudulent, deceptive, or dishonest practices.

We agree with the commissioner. The legislature specifically provided that the commissioner has the authority to evaluate and approve an aggrieved person's accelerated application to the recovery fund if certain requirements are met. *See* Minn. Stat. § 82.86, subd. 8(a). These requirements include several conditions that may not be adjudicated by the district court when it awards judgment. For example, the aggrieved person must establish that the licensee had a license at the time of the alleged fraudulent, deceptive, or dishonest practice, or conversion, and that he or she was performing an act for which a license was required. *See id.*, subd. 7. Thus, under the statute's plain language, the commissioner is required to exercise his discretion and evaluate evidence

before making a decision about whether an aggrieved person is eligible to receive payment from the recovery fund.

Dziuk's interpretation of Minn. Stat. § 82.86, subd. 7, would require an applicant to bring a separate cause of action for "fraudulent, deceptive, or dishonest practices." But the plain language of the statute does not require that only an aggrieved person who obtains judgment for a specific cause of action may apply for payment from the recovery fund. Instead, the use of the phrase "fraudulent, deceptive, or dishonest practices" in the statute indicates that the legislature intended the statute to encompass a range of wrongful behavior by a licensee. It also indicates that the legislature intended each situation to be evaluated separately by the commissioner to determine whether "fraudulent, deceptive, or dishonest practices" are present, regardless of the cause of action that led to the judgment. Thus, we construe the phrase "fraudulent, deceptive, or dishonest practices" liberally.

A liberal interpretation of the phrase "fraudulent, deceptive, or dishonest practices" is supported by an examination of its use in chapter 82. Although the phrase is not defined in Minn. Stat. § 82.86, it is defined in Minn. Stat. § 82.82 (2014), which addresses licensee discipline. That section provides insight into the type of conduct that satisfies the definition of "fraudulent, deceptive, or dishonest practices." Under Minn. Stat. § 82.82, subd. 1(b), the commissioner may suspend or revoke a real estate license if the licensee "has engaged in a fraudulent, deceptive, or dishonest practice." The chapter sets forth a nonexclusive list of "acts and practices" that constitute "fraudulent, deceptive, or dishonest practices" for the purposes of suspension or discipline under Minn. Stat. § 82.82, subd. 1. Minn. Stat. § 82.81, subd. 12(a), (c) (2014). The list includes

8

"mak[ing] any false or misleading statements, or permit[ing] or allow[ing] another to make any false or misleading statements, of a character likely to influence, persuade, or induce the consummation of a transaction contemplated by this chapter," and "fail[ing] within a reasonable time to account for or remit any money coming into the licensee's possession which belongs to another." *Id.*, subd. 12(a)(10), (11).

Here, Dziuk committed multiple acts that the commissioner could conclude were "fraudulent, deceptive, or dishonest practices." Dziuk used his status as a licensed real estate broker to induce van Riemsdyk into signing a sublease that was not authorized by his landlord and paying him a $7,000 prelease deposit. Dziuk cashed the $7,000 deposit despite never signing the sublease, and then he attempted to unilaterally increase van Riemsdyk's rent by $250 per month. After van Riemsdyk objected to the rent increase and requested a refund of the $7,000 prelease deposit, Dziuk claimed that the prelease deposit was nonrefundable and refused to refund it. Even after van Riemsdyk obtained a judgment against Dziuk, Dziuk has failed to refund the prelease deposit or pay any money toward the judgment. Dziuk has not shown that the commissioner incorrectly concluded that this conduct constitutes "fraudulent, deceptive, or dishonest practices."

Finally, we note that for an aggrieved person to receive payment from the recovery fund, the licensee also must have "performed acts for which a license is required." *See* Minn. Stat. § 82.86, subd. 7. Although Dziuk argued to the commissioner that he did not perform acts for which a license is required, he has not raised the argument to this court. Therefore, Dziuk has waived this argument on appeal, and we will not address it in this opinion.

9

Accordingly, because the commissioner has the statutory authority to approve payment from the recovery fund under an accelerated procedure and van Riemsdyk meets all of the requirements to receive payment under that procedure, we affirm the commissioner's decision to grant van Riemsdyk's application for payment.

**II.    Van Riemsdyk's claim for payment from the recovery fund is not precluded by res judicata.**

Dziuk argues that payment to van Riemsdyk from the recovery fund is precluded by res judicata because van Riemsdyk failed to raise the claim of fraud, deceptive or dishonest practices, or conversion of trust funds before the district court.  Res judicata bars a subsequent claim when: "(1) the earlier claim involved the same claim for relief; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter." *State v. Joseph*, 636 N.W.2d 322, 327 (Minn. 2001).  "Res judicata applies to all claims actually litigated as well as to all claims that could have been litigated in the earlier proceeding." *Id.*

We conclude that Dziuk has waived this argument because he did not raise it to the commissioner and the commissioner did not decide the issue. *See REM-Canby, Inc. v. Minn. Dep't of Human Servs.*, 494 N.W.2d 71, 76-77 (Minn. App. 1992) (stating that failure to raise an issue in an administrative proceeding generally precludes review on appeal), *review denied* (Minn. Feb. 25, 1993).  But even if Dziuk had raised this issue below, it would fail on its merits.  A request for accelerated payment from the recovery fund is predicated on an aggrieved party having received a judgment against the licensee

10

in the district court.  Thus, van Riemsdyk is not precluded from applying for and receiving accelerated payment from the recovery fund based on the judgment he received against Dziuk in the district court.

**Affirmed.**